UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NGOC THANH PHONG HUYNH,<br>　*Petitioner*,<br><br>v.<br><br>ANTONE MONIZ, Superintendent, PATRICIA HYDE, Field Office Director, TODD LYONS, Acting Director U.S. Immigration and Customs Enforcement, KRISTI NOEM, U.S. Secretary of Homeland Security, PAM BONDI, U.S. Attorney General,<br>　*Respondents*. | Docket No. 1:25-cv-10831-FDS<br><br><br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

**AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

1. Petitioner Ngoc Thanh Phong Huynh[1] is a lawful permanent resident of the United States.

2. Mr. Huynh has a bachelor of science from Northeastern University. He works in Massachusetts for a pharmaceutical company, where he is the Manufacturing Associate Lead for a team that makes Individualized Neoantigen Therapies. His team makes medicines for the treatment of lung cancer. Mr. Huynh's team creates unique treatments for each individual patient, based on an analysis of the specific genetic mutations present in their disease.

3. Mr. Huynh is 37 years old. He is originally from Vietnam. He arrived in the United States when he was 12 years old, in the year 2000. He received lawful permanent resident status at that time. He has been a lawful permanent resident for approximately 25 years.

4. Mr. Huynh is the father of two U.S. Citizen children, who reside principally in his custody.

---

[1] Petitioner's name is rendered as it is currently reflected in U.S. Department of Homeland Security records. There may be some confusion arising from Vietnamese-language naming conventions. Petitioner's given name is Phong, and his last name is Huynh.

5. In addition to his work, Mr. Huynh is currently studying part-time at Northeastern University for his master's degree.

6. As an adult, Mr. Huynh has never been charged with any crime.

7. Since Mr. Huynh received his green card, he has repeatedly traveled to visit Vietnam and returned to the United States without incident.

8. Mr. Huynh recently traveled to Vietnam for about two weeks. He returned to Logan International Airport on or about April 1, 2025.

9. Upon arrival at Logan, U.S. Customs and Border Protection ("CBP") held Mr. Huynh at the airport secondary screening station overnight for approximately 18 to 36 hours. CBP did not provide Mr. Huynh with any food during this time.

10. On the evening of April 2, Mr. Huynh was transferred to the custody of U.S. Immigration and Customs Enforcement ("ICE") at the Plymouth County Correctional Facility ("PCCF").

11. Ms. Huynh, through counsel, filed the original Petition in this action on April 5, 2025. At that time, Mr. Huynh had not been provided with a Notice to Appear or any other charging document explaining the basis for his detention.

12. Two days later, on April 7, 2025, opposing counsel in this case provided Mr. Huynh's counsel with a copy of a Notice to Appear ("NTA"). *See* Ex. A (NTA).

13. The NTA charges Mr. Huynh as an arriving alien "who has been convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime."

14. The NTA further refers to two misdemeanor offenses from almost 20 years ago.

15. The two offenses allegedly occurred in October 2005, when Mr. Huynh was 17 years old.

16. Both charges were continued without a finding in April 2006, and were later dismissed in November 2006. Neither charge resulted in any sentence of incarceration. *See* Ex. B (docket).

17. The two charges were for larceny under $250 and receiving stolen property under $250.

18. On information and belief, the federal government has been aware of these alleged offenses since approximately 2007 or 2008, but has never before imprisoned Mr. Huynh or sought his deportation.

19. To the contrary, Mr. Huynh has successfully renewed his green card multiple times since 2006, and has repeatedly traveled outside the United States and returned without incident.

20. Mr. Huynh remains detained at PCCF pending resolution of the NTA.

21. Mr. Huynh faces potentially lengthy proceedings in the Immigration Court to resolve the NTA. His first appearance in the Immigration Court (referred to as a Master Calendar Hearing) is not until April 24, 2025. The merits hearing for his case (referred to as an Individual Hearing) is likely to be scheduled 60-90 days thereafter, and may be continued over multiple additional dates beyond that. If Mr. Huynh is ordered removed by the Immigration Court, he faces appellate process in the Board of Immigration Appeals that may take between 6 and 12 months.

22. Immigration detention is a form of civil confinement and must serve one or both of two regulatory goals: ensuring appearance at future immigration proceedings, and preventing danger to the community. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also Demore v. Kim*, 538 U.S. 510, 532-33 (2003) (Kennedy, J., concurring).

23. Mr. Huynh has never received an individualized determination of whether he should be detained for the duration of his immigration proceedings due to flight risk or danger to the community.

24. Mr. Huynh will never receive an individualized bond hearing or bail hearing in the Immigration Court throughout the entire duration of his immigration proceedings. The Immigration Court will incarcerate him as a mandatory detainee under 8 U.S.C. § 1225(b)(2)(A) and 8 C.F.R. § 1003.19(h)(2)(i)(B), regardless of whether his detention serves the underlying purposes of ensuring future appearance and preventing danger to the community.

25. Mr. Huynh is not a flight risk. Mr. Huynh is not dangerous.

26. Mr. Huynh's continued detention does not serve the regulatory goals of immigration detention.

27. Mr. Huynh's continued detention is contrary to the public interest.

28. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus) and 28 U.S.C. § 1331 (federal question).

29. Venue is proper because Petitioner's immediate custodian is located in the District of Massachusetts, and Petitioner is detained in the District of Massachusetts.

30. Respondent Antone Moniz is the Superintendent of PCCF.

31. Respondent Patricia Hyde is the New England Field Office Director for U.S. Immigration and Customs Enforcement.

32. Respondent Todd Lyons is the Acting Director for U.S. Immigration and Customs Enforcement.

33. Respondent Kristi Noem is the U.S. Secretary of Homeland Security.

34. Respondent Pam Bondi is the U.S. Attorney General.

35. All respondents are named in their official capacities.

36. Mr. Huynh is currently in custody in the District of Massachusetts, and one or more of the Respondents is his immediate custodian.

## CLAIMS FOR RELIEF

### COUNT ONE
### Violation of Fifth Amendment Right to Due Process

37. Returning lawful permanent residents, like Mr. Huynh, have a constitutional right not to be deprived of life, liberty, or property without due process of law. *See* U.S. Const. amend. V; *Landon v. Plasencia*, 459 U.S. 21, 32-34 (1982); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 595-601 (1953).

38. On information and belief, Mr. Huynh is currently being arrested and detained by federal agents without cause and in violation of his constitutional rights to due process of law.

39. Immigration detention is a form of civil confinement and must serve one or both of two regulatory goals: ensuring appearance at future immigration proceedings, and preventing danger to the community.

40. Mr. Huynh is being subjected to mandatory detention under 8 U.S.C. § 1225 and will never receive an individualized hearing to determine if his detention is necessary to ensure his appearance at immigration proceedings or to protect the community.

41. Mr. Huynh is a 37-year-old biochemist who manufactures unique medications for the treatment of cancer. He has been a lawful permanent resident for roughly 25 years, and has two U.S. Citizen children. He is not a danger, and he presents no risk of flight. The Government's prior course of conduct acknowledged that his two misdemeanor charges from when he was a juvenile—both of which were continued without a finding and later dismissed—do not represent any risk of flight or danger to the community.

42. For a person in Mr. Huynh's circumstances, detention does not advance the regulatory

goals of civil immigration detention. *See Zadvydas*, 533 U.S. at 690; *see also Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring). The application of mandatory detention to Mr. Huynh imposes upon him an irrebuttable presumption of flight risk and danger based solely on two non-violent, nearly twenty-year-old misdemeanor offenses. The Government was aware of the convictions that form their charges of removability when he renewed his green card and when he returned to the United States after prior travel and did not initiate removal proceedings against him. *See Perera v. Jennings*, 598 F. Supp. 3d 736, 744-46 (N.D. Cal. 2022) (holding that mandatory detention under 8 U.S.C. § 1226(c) is unconstitutional as applied to LPR whom ICE knew was removable, yet allowed him to live and work in the community for six years).

43. For a person in Mr. Huynh's circumstances, detention without any individualized process also does not satisfy the procedural due requirements of *Mathews v. Eldridge*, 424 U.S. 319 (1976). First, he has a weighty liberty interest to be free from custody, and to live and work in the United States and to rejoin his family. *See Landon*, 459 U.S. at 34; *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects") (quoting *Zadvydas*, 533 U.S. at 695). Second, there is a risk of erroneous deprivation since there will be no individualized determination of whether he is a danger or flight risk. In *Hernandez-Lara*, the First Circuit concluded that misallocating the burden of proof in bond hearings amounted to rolling "loaded dice," and created a high risk of erroneous deprivation of liberty. *See* 10 F.4th at 32. That reasoning is amplified here, as Mr. Huynh will receive no bond hearing. Third, the Government has no interest in the blanket detention of Mr. Huynh without establishing dangerousness or a risk of flight, when the sole basis for his detention is a pair of misdemeanor convictions

that happened nearly twenty years ago, and the Government has had multiple opportunities to detain him for removal but chose not to. *See Hernandez-Lara*, 10 F.4th at 32-33; *id.* at 33 ("limiting the use of detention to only those noncitizens who are dangerous or a flight risk may save the government, and therefore the public, from expending substantial resources on needless detention").

44. For all the foregoing reasons, as applied to Mr. Huynh, mandatory detention under 8 U.S.C. § 1225 violates the Due Process Clause of the Fifth Amendment to the United States Constitution.

45. Should this Court hold a bond hearing or alternatively require that the immigration judge hold a bond hearing, due process requires that the Government prove that Mr. Huynh is a danger by clear and convincing evidence and a flight risk by preponderance of the evidence. The Government must prove by clear and convincing evidence that no reasonable alternative to detention existed that would ensure the safety of the community, and by preponderance of the evidence that conditions of release cannot ensure Mr. Huynh's return to court, and the court must inquire into his ability to pay. *See Brito v. Barr*, 415 F. Supp. 3d 258, 266-70 (D. Mass. 2019) (holding that at § 1226(a) bond hearings, the Government must bear the burden of proof and the IJ must consider alternatives to detention and a detainee's ability to pay), *aff'd in part, vacated in part, remanded by Brito v. Garland*, 22 F.4th 240, 252 (2021);[2] *Doe v. Tompkins*, No. 18-12266-PBS, 2019 U.S. Dist. LEXIS 22616, at *5 (D. Mass. Feb. 12, 2019) (holding that the immigration court should properly

---

[2] The First Circuit, in *Brito v. Garland*, did not affirm the District Court's holdings with respect to requiring IJs to consider alternatives to detention and a detainee's ability to pay. *See* 22 F.4th at 252-56. The First Circuit did not opine on the merits of these constitutional claims, but rather reversed because petitioners had not exhausted the alternatives-to-detention claim before the IJ, and the named plaintiffs did not have standing to address the ability to pay claim. *Id.* The First Circuit noted, "it is easy to see how conditions of release might shape an immigration judge's determination as to whether a noncitizen poses a flight risk or danger." *Id.* at 254.

allocate the burden of proof and consider alternatives to detention to ensure the safety of the community and the petitioner's future appearances), *aff'd*, 11 F.4th 1 (1st Cir. 2021); *Hernandez v. Sessions*, 872 F.3d 976, 991 (9th Cir. 2017) ("A bond determination process that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests."); *Ousman D. v. Decker*, Civil No. 20-9646 (JMV), 2020 U.S. Dist. LEXIS 171243, at *9–10 (D.N.J. Sept. 18, 2020) (bond hearing failed to comply with due process where immigration judge did not consider less restrictive alternatives to detention); *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 241-42 (W.D.N.Y. 2019) (holding that due process requires immigration judge to consider whether less restrictive alternatives to detention would address the Government's legitimate purposes); *Reid v. Donelan*, 390 F. Supp. 3d 201, 225 (D. Mass. 2019) (holding that Due Process requires the IJ to consider alternatives to detention and a detainee's ability to pay and explaining "this requirement guarantees that the decision to continue to detain a criminal alien is reasonably related to the Government's interest in protecting the public and assuring appearances at future proceedings"), *aff'd in part, vacated in part, remanded by Reid v. Donelan*, 17 F.4th 1, 12 (1st Cir. 2021);[3] *Davis v. Garland*, No. 22-CV-443-LJV, 2023 U.S. Dist.

---

[3] In 2021, the First Circuit affirmed in part, vacated in part, and remanded the District Court's 2019 *Reid* decision. *See Reid v. Donelan*, 17 F.4th 1, 12 (1st Cir. 2021). However, the First Circuit affirmed only as to the "judgment against the class rejecting the claim that persons detained for six months under section 1226(c) are automatically entitled to a hearing before an IJ that might lead to their release on bond pending the conclusion of removal proceedings." *See id.* at 12. The decision held that the district court impermissibly issued declaratory and injunctive relief, and that the district court erred in using the "class as a bootstrap to then adjudicate, on a class-wide basis, claims that hinge on the individual circumstances of each class member." *Id.* at 9-12. Notably, the First Circuit did not rule on the constitutionality of the procedural protections granted to class members by the District Court. Rather, the First Circuit rejected that the District Court could order such procedural protections outside of the context of an individual habeas petition. *See id.* at 11. Although the District Court's 2019 *Reid* decision is no longer binding, much of the rationale employed by the District Court in its holding setting forth the burden and standards of proof at § 1226(c) bond hearings protections follows the rationale utilized by the First Circuit in *Hernandez-Lara* to hold

LEXIS 20490 (W.D.N.Y. Feb. 7, 2023) ("[T]he decisionmaker must consider—and must address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on conditions, that could reasonably address the government's interest in detaining [the petitioner]."); *O.F.C. v. Decker*, No. 22 Civ. 2255, 2022 U.S. Dist. LEXIS 177255, at *35 (S.D.N.Y Sept. 12, 2022) (finding that the IJ must consider alternative conditions of release in determining whether to grant bond).

### PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Retain jurisdiction over this matter.

(2) Maintain all current orders and the current schedule in this case, including the Order prohibiting Respondents from transferring Mr. Huynh without notice (ECF No. 4), the Order requiring Respondents to respond to the Petition by April 14, 2024 (ECF No. 8), and the Order setting a hearing for April 17, 2025 (ECF No. 9).

(3) While this Petition is pending, grant Mr. Huynh release on bail and any conditions that the Court deems appropriate, pending final adjudication of this Petition. *See Savino v. Souza*, 453 F. Supp. 3d 441, 453-54 (D. Mass. 2020) (citing *Mapp v. Reno*, 241 F.3d 221, 223 (2d Cir. 2001)).

(4) Declare that Mr. Huynh's detention violates the Due Process Clause of the Fifth Amendment.

(5) Issue a Writ of Habeas Corpus ordering Respondents to release Mr. Huynh, if necessary including any terms and conditions of release that the Court deems appropriate after an individualized hearing.

---

that Due Process requires the government to bear the burden of proof at § 1226(a) bond hearings. *See Hernandez-Lara*, 10 F.4th at 28-41; *Reid*, 819 F.3d at 224-25.

(6) Alternatively, order a constitutionally adequate bond hearing to be held promptly before an Immigration Judge, at which the Government bears the burden of proving either by clear and convincing evidence that his detention is necessary to protect the community from harm or by preponderance of the evidence that his detention is justified to ensure his appearance for his removal proceedings; and even if it is, that no condition or combination of conditions, such as alternatives to detention, can reasonably assure his future appearance and safety of the community; and finally, that if bond is set, the Immigration Judge be required to consider Petitioner's ability to pay in setting any bond amount.

(7) Grant any further relief this Court deems just and proper.

Respectfully submitted,

Date: April 9, 2025

/s/Jin-Ho King
Jin-Ho King #679528 (jk@clearsky.legal)
CLEAR SKY LEGAL PC
28 State Street, Suite 802
Boston, Massachusetts 02109
Tel. (857) 382-7450 x802

*Counsel for Petitioner*