**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NGOC THANH PHONG HUYNH | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )    Civil Action No. 25-cv-10831-FDS |
| | ) |
| ANTONE MONIZ, et al., | ) |
| | ) |
| Respondents. | ) |
| | ) |

## RESPONDENTS' OPPOSITION TO PETITIONER'S
## PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C § 2241

Respondent Antone Moniz ("Respondent"), by and through his attorney, Leah B. Foley,

United States Attorney for the District of Massachusetts, respectfully submit this opposition to

Ngoc Thanh Phong Huynh's ("Petitioner") Amended Petition for Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2241 (the "Petition").  Doc. No. 10.  Respondent responds to the Petition

as contemplated by Rules 4 and 5 of the Federal Rules Governing Section 2254.[1]

## INTRODUCTION

Petitioner is a native and citizen of Vietnam and is a lawful permanent resident ("LPR")

to the United States.  Doc. No. 10.  Petitioner filed his amended Petition to challenge his

detention by U.S. Immigration and Customs Enforcement ("ICE") after U.S. Customs and

Border Protection ("CBP") deemed him inadmissible to the United States after arrival at Boston

Logan International Airport on April 1, 2025.  *Id.*  Petitioner has two convictions for Crimes

---

[1] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus
petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan.
30, 2020) (evaluating the Government's response and dismissing habeas petition under Section
2254 Rules).

Involving Moral Turpitude ("CIMT") which render him inadmissible to the United States pursuant to 8 U.S.C. § 1182(a)(2). *Id.*, ¶¶ 13-17. As such, CBP denied Petitioner admission to the United States on April 1 and issued him with a Notice to Appear ("NTA") in removal proceedings. *Id.*, ¶12; Doc. No. 10-1. As an arriving alien inadmissible to the United States, ICE is mandated to detain Petitioner under 8 U.S.C. § 1225(b)(2) during his removal proceedings. ("[I]f the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding.") (emphasis added).

Petitioner acknowledges that his detention is mandated by 8 U.S.C. § 1225 but contends that such detention violates the Fifth Amendment's Due Process Clause. *Id.*, ¶ 44. Petitioner's detention, however, is fully supported by statute, regulation, and the Constitution. *See Jennings v. Rodriguez,* 583 U.S. 281, 297 (2018) (Explaining that detention under Section 1225(b) must continue until removal proceedings end and nothing in the statute "says anything whatsoever about bond hearings.").

His constitutional claim fails as the Supreme Court has made clear that "[d]etention during deportation proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003). Petitioner can challenge his inadmissibility determination and seek relief from removal in Immigration Court and can seek parole from custody at ICE's discretion. Such process passes constitutional muster, and Petitioner has failed to show that he is entitled to release or a bond hearing because he has only been detained for less than two weeks.

As such, this Court should not order his release and must instead deny his Petition.

## BACKGROUND

**A.  Legal Background for Aliens Seeking Admission to the United States.**

The Supreme Court has long recognized that Congress exercises "plenary power to make rules for the admission of foreign nationals and to exclude those who possess those characteristics which Congress has forbidden." *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972).  Pursuant to that longstanding doctrine, "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."  *Landon v. Plasencia*, 459 U.S. 21, 32 (1982).

As a general matter, pursuant to 8 U.S.C. § 1101(a)(13)(C), an LPR who leaves the United States and then seeks to reenter the country is "not ... regarded as seeking an admission into the United States."  But, there are six exceptions to this general rule.  As relevant here, LPRs are regarded as seeking admission to the United States if they "ha[ve] committed an offense identified in section 1182(a)(2)" which include "crime[s] involving moral turpitude." *Id.* § 1101(a)(13)(C)(v).  Accordingly, the plain language of section 1101 makes clear that LPRs are "seeking ... admission" upon reentry to the United States if certain enumerated circumstances – including their having committed a CIMT – are present.  *See De Vega v. Gonzales*, 503 F.3d 45, 48 (1st Cir. 2007) (Finding Section 1101(a)(13)(C) "plain on its face" in its determination that an LPR "who leaves the United States and then returns [] to be 'seeking admission' if that person fits within any of the six categories enumerated in 8 U.S.C. § 1101(a)(13)(C)."); *Mejia-Rodriguez v. Holder*, 558 F.3d 46, 49-50 (1st Cir. 2009) (Explaining that "a lawful permanent resident who departs the country and attempts to return is not similarly situated to a lawful permanent resident who never left.")

As such, an LPR who, by operation of law, is seeking admission to the United States

under Section 1101(a)(13)(C) at a port of entry is subject to inspection by a CBP officer and carries the burden of demonstrating his admissibility into the United States. *See* 8 U.S.C. § 1225(a)(3); 8 C.F.R. § 235.1(f). The term "admission" is defined by the INA to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A); *see also* 8 C.F.R. § 1235.1 (setting forth inspection procedures). An alien who is seeking admission is known as "an applicant for admission." 8 U.S.C. § 1225(a)(1).

Under 8 U.S.C. § 1225(b)(2)(A), if CBP determines an applicant for admission is not admissible to the United States, such individual must be detained while he contests such determination before the Immigration Court. ("[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding" in Immigration Court.) (emphasis added). The Supreme Court has confirmed that this statutory mandate for detention extends for the entirety of removal proceedings. *Jennings*, 583 U.S. at 302 ("[Section] 1225(b)(2) . . . mandate[s] detention of aliens *throughout the completion of applicable proceedings* and not just until the moment those proceedings begin." (emphasis added)).

An applicant for admission detained under Section 1225(b)(2)(A) therefore is not statutorily entitled to release or to seek a bond hearing while in removal proceedings.[2]

---

[2] An IJ "may not" conduct a bond hearing to determine whether an applicant for admission should be released into the United States during removal proceedings. 8 C.F.R. § 1003.19(h)(2)(i)(B) ("[A]n immigration judge may not redetermine conditions of custody imposed by the Service with respect to . . . [a]rriving aliens in removal proceedings, including aliens paroled after arrival pursuant to section 212(d)(5) of the Act.").

The only means to obtain release for an applicant for admission is through parole. CBP and ICE have discretion to parole applicants for admission into the United States. *See* 8 U.S.C. § 1182(d)(5). For those detained under § 1225(b), regulations provide that ICE or CBP may grant parole if the alien is "neither a security risk nor a risk of absconding," and (1) has a serious medical condition; (2) is pregnant; (3) falls within certain categories of juveniles; (4) will be a witness; or (5) if continued detention is otherwise "not in the public interest." 8 C.F.R. § 212.5(b); *see also* 8 C.F.R. § 235.3(c).

## B. Petitioner's Immigration and Criminal History.

Petitioner is a native and citizen of Vietnam who obtained LPR status in 2000. Doc. No. 10, ¶ 3. Petitioner was convicted of larceny under $250 and receiving stolen property under $250 on or about April 24, 2006. *Id.*, ¶¶ 15-17. On April 1, 2025, Petitioner sought admission to the United States upon arrival at Boston Logan. *Id.*, ¶ 8. CBP, however, determined that Petitioner was inadmissible to the United States pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I) on account of his convictions for CIMTS and issued him with a NTA in Immigration Court. *Id.*, ¶¶ 13-14. Petitioner's first appearance in Immigration Court is scheduled for April 24, 2025. *Id.*, ¶ 21.

## C. Procedural History.

Petitioner filed his original petition on April 5, 2025 and asked this Court to order his release on account of a Fifth Amendment violation. Doc. No. 1. He filed his amended Petition on April 9, 2025 and continues to assert that his detention violates the Due Process Clause of the Fifth Amendment. Doc. No. 10. He asserts that his detention is "without cause" and that he "is not a danger, and he presents no risk of flight." *Id.*, ¶¶ 38-41. Petitioner claims that detention "without any individualized process" violates his procedural due process rights. *Id.*, ¶ 43. As

such, he asks this Court to order his release or that he receive a bond hearing in Immigration

Court.  *Id.*, PRAYER FOR RELIEF.

## **ARGUMENT**

ICE's detention of Petitioner is mandated by statute and does not offend the

Constitution—as such, this Court should deny the Petition.

**A.  Petitioner's Detention is Mandated by Statute.**

CBP considered Petitioner to be seeking admission to the United States pursuant to 8

U.S.C. § 1101(a)(3)(C)(v) because of Petitioner's past convictions for CIMTs.  As Petitioner was

therefore seeking admission to the United States, he was subject to inspection by CBP pursuant

to 8 U.S.C. § 1225(a)(3) which provides that "[a]ll aliens … who are applicants for admission …

shall be inspected by immigration officers."  Based upon Petitioner's criminal record, CBP

determined that Petitioner was "not clearly and beyond a doubt entitled to be admitted" per 8

U.S.C. § 1225(b)(2)(A) because such convictions render him inadmissible under 8 U.S.C. §

1182(a)(2).  As such, ICE is mandated by statute to detain him during his removal proceedings

without access to release or a bond hearing as such aliens "shall be detained for a proceeding".  8

U.S.C. § 1225(b)(2)(A).

As explained by the Supreme Court in *Jennings*, these statutory provisions "mandate

detention of applicants for admission until [removal] proceedings have concluded."  538 U.S. at

297.  In declining to find a statutory requirement to conduct bond hearings for such applicants

for admission, the Supreme Court explained that "nothing in the statutory text imposes any limit

on the length of detention … and neither [statutory provision] says anything whatsoever about

bond hearings."  *Id.*  As such, Petitioner's detention without a bond hearing or individualized

review of his continued detention is lawful pursuant to the plain language of the statute and Supreme Court precedent.

### B. Petitioner's Brief Detention does not Violate the Constitution.

Petitioner's brief two-week detention also does not violate the Constitution's Fifth Amendment's Due Process Clause. The Supreme Court has consistently recognized that applicants for admission to the United States have limited due process rights and the Court has also upheld the constitutionality of detention during removal proceedings, even in the absence of access to a bond hearing.

### 1. Applicants for Admission to the United States have Limited Due Process Rights.

The Supreme Court "has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Plasencia*, 459 U.S. at 32 (collecting cases). The broad scope of the political branches' authority over immigration is "at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152–53 (2004). Accordingly, "certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographical borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

The Supreme Court has held that applicants for admission lack any constitutional due process rights with respect to admission: "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned," *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("*Mezei*"), and "it is not within the province of any court, unless expressly authorized by law, to review [that] determination". *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950). As recently explained by the Supreme Court, courts

recognize a "century-old rule regarding the due process rights of an alien seeking initial entry" where an applicant for admission—like Petitioner— "has only those rights regarding admission that Congress has provided by statute" and "Due Process provides nothing more". *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020).

As such, applicants for admission may be detained without a bond hearing pending admission or removal without running afoul of the Constitution because statute does not provide for bond hearings and only allows for release through the agency's exercise of parole. In *Mezei*, for example, the Supreme Court held that a returning lawful permanent resident's detention at the border without a hearing to effectuate his exclusion from the United States did not violate due process. *Mezei*, 345 U.S. at 206. Specifically, Mr. Mezei arrived at Ellis Island seeking admission into the United States. *See id.* And even though he had resided in the United States previously, he had since been "permanently excluded from the United States on security grounds." *Id.* at 207. As a result, his home country would not accept him, and he had been detained for more than a year to effectuate his exclusion when he filed his habeas petition. *Id.* at 207–08. The Supreme Court held that Mr. Mezei's detention did not "deprive[ ] him of any statutory or constitutional right." *Id.* at 215. Instead, the Court reiterated that "the power to expel or exclude aliens" is a "fundamental sovereign attribute exercised by the Government's political departments" that is "largely immune from judicial control." *Id.* at 210. The Court recognized that "once passed through our gates, even illegally," aliens "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Id.* at 212. But "an alien on the threshold of initial entry stands on a different footing" than an alien who has effected an entry into the United States. *Id.*

The Supreme Court's decision in *Thuraissigiam* reinforces *Mezei*'s holding.  In relevant part, *Thuraissigiam* concerned a due process challenge raised by an alien apprehended 25 yards from the border, which he crossed illegally.  591 U.S. at 139.  In its decision, the Supreme Court delineated the boundaries of due process claims that can be made by applicants for admission. Specifically, the Court held that for such aliens stopped at the border, even if paroled thereafter, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law."  *Id.* at 131 (citing *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)); *see also Guerrier v. Garland*, 18 F.4th 304, 313 (9th Cir. 2021) ("In concluding that Thuraissigiam's due process rights were not violated, the Supreme Court emphasized that the due process rights of noncitizens who have not 'effected an entry' into the country are coextensive with the statutory rights Congress provides.").  In reaching this conclusion, *Thuraissigiam* cited *Mezei* authoritatively, *see* 591 U.S. at 139, because of the basic distinction between aliens already "present" in the United States and those who stand at the "threshold of entry," *Mezei*, 345 U.S. at 208, 214.

It is true that *Thuraissigiam* did not involve an LPR applicant for admission.  The Supreme Court, however, has provided some guidance regarding the due process rights of continuously present residents who face removal from the United States, although not in the specific situation as set forth in this matter.  These cases, however, do not support Petitioner's claim that he is entitled to release or a bond hearing on account of his brief detention upon seeking admission to the United States.

For example, in *Plasencia,* the Supreme Court considered, but did not ultimately decide, whether a long-term resident who left the country for a brief period and was placed in exclusion proceedings upon return received adequate due process at her exclusion hearing. 459 U.S. at 32.

9

The Supreme Court acknowledged that "once an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly." *Id.* The Court explained that its cases have "suggested that a continuously present resident alien is entitled to a fair hearing when threated with deportation" and that "a continuously present permanent resident alien has a right to due process in such a situation." *Id.* The *Plasencia* Court also recognized its decision in *Kwong Hai Chew v. Colding*, 344 U.S 590, 596 (1954) which stood for the proposition that "a resident alien returning from a brief trip has a right to due process just as would a continuously present resident alien." *Id.* at 31. The Court described the amount of process due in such situation as "a hearing on the charges underlying any attempt to exclude him." *Id.* at 33.

The Supreme Court acknowledged the judiciary's limited role was to determine "whether the procedures meet the essential standards of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy." *Id.* at 35. In *Plasencia*, the Court recognized that "Congress did not intend to require the use of deportation procedures in cases such as this one" and therefore "it would be improper simply to impose deportation procedures here because the reviewing court may find them preferable." *Id.* Instead, the judiciary's role was to "determine what procedures would satisfy the minimum requirements of due process on the re-entry of a permanent resident alien." *Id.* The Supreme Court, ultimately, however, did "not decide the contours of the process that is due or whether the process accorded Plasencia was insufficient." *Id.* at 32.

As the First Circuit explained in *Mejia-Rodriguez v. Holder*, 558 F.3d 46, 49-50 (1st Cir. 2009), "a lawful permanent resident who departs the country and attempts to return is not similarly situated to a lawful permanent resident who never left." *See also Chen v. Aitken*, 917

F. Supp. 2d 1013, 1016–17 (N.D. Cal. 2013) (Finding that an LPR classified as an arriving alien was "not entitled to the same rights as if he had been a legal permanent resident with continuous residence in the United States."). Petitioner, even though he is properly charged as an arriving alien, is still nonetheless entitled to challenge his inadmissibility determination and seek relief from removal in Immigration Court, before the Board of Immigration Appeals, and the circuit court if necessary. As such, Petitioner's due process rights are protected as he will receive the "fair hearing when threatened with deportation" that the *Plasencia* Court considered required for a "continuously present resident alien". *Id.* The Fourth Circuit, in *Othi v. Holder,* 734 F.3d 259, 269–70 (4th Cir. 2013) similarly found no process violation for a LPR deemed inadmissible by CBP by explaining that he was "owed three considerations before being deemed inadmissible: (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard." Petitioner will also receive these three considerations as provided by statute and therefore his due process challenge where he seeks release or a bond hearing fails.

Petitioner can also ask ICE to exercise its discretion and parole him from its custody while his removal proceedings occur. Petitioner does not explain whether he has sought parole from ICE prior to filing his habeas petition, but such possible avenue for release provides another means of due process and should be exhausted prior to making a claim that his due process rights were violated. *See Traore v. Decker*, No. 19-CV-4612 (ALC), 2019 WL 3890227, at *4 (S.D.N.Y. Aug. 19, 2019) (Explaining that "by failing to file an application for or even request[ing] parole, Petitioner has failed to exhaust his administrative remedies."); *Alexandre v. Decker*, No. 17CIV5706GBDKHP, 2019 WL 1407353, at *5 (S.D.N.Y. Mar. 28, 2019) (concluding that "the parole procedure, as currently enforced, satisfies due process for arriving

aliens because (1) they are differently situated than individuals within our borders, and (2) the period of detention during such a proceeding is not indefinite—it will end upon the conclusion of the removal proceeding.")

In seeking release to remedy an alleged due process violation, Petitioner ignores *Mezei*'s holding, reaffirmed in *Thuraissigiam*, that "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." 345 U.S. at 212. Here, 8 U.S.C. § 1225(b)(2)(A) makes plain that applicants for admission who are inadmissible "shall be detained for a proceeding" in Immigration Court. As such, Petitioner is not entitled to release because "an alien in [Petitioner's] position has only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140.

While this Court has not considered a case of similar nature to this matter, other district courts have routinely declined to find due process violations for habeas petitions detained pursuant to Section 1225(b), even when the petitioner was an LPR. *See Perez v. Aviles*, 188 F. Supp. 3d 328, 332–33 (S.D.N.Y. 2016) (Detention under Section 1225(b) did not violate due process because detention, even though lengthy, "has not been arbitrary or unreasonable."); *Bataineh v. Lundgren*, No. 20-3132-JWL, 2020 WL 3572597, at *8 (D. Kan. July 1, 2020) (Finding that "the applicable statutory process shapes an arriving alien's procedural due-process rights and therefore they have no statutory right to release or a bond hearing."); *Ramos Funes v. Searls*, No. 19-CV-6332 CJS, 2020 WL 1956346, at *14–15 (W.D.N.Y. Apr. 23, 2020) (no substantive or procedural due process violation for arriving alien detained for lengthy removal proceedings).

Because statute does not allow for his release from detention or for a bond hearing to occur, Petitioner is not entitled to such relief under the Constitution currently either.  As such, Petitioner's Fifth Amendment claim fails.

2.  **Detention During the Course of Removal Proceedings is Constitutional**.

Regardless of the level of due process Petitioner is entitled to as an applicant for admission to the United States, his due process challenge to his brief detention fails as the Supreme Court has held that detention during removal proceedings, even without access to a bond hearing, is constitutional.

In *Demore v. Kim*, 538 U.S. 510, 522 (2003) the Supreme Court upheld the constitutionality of a statutory provision that requires mandatory detention during removal proceedings without access to bond hearings, even for LPRs.  The Court "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* at 523; *Wong Wing v. U.S.* 163 U.S. 288, 235 (1896) (holding deportation proceedings "would be vain if those accused could not be held in custody pending the inquiry into their true character."). The Court therefore re-affirmed its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings". *Id.* at 526.  The Court explained that "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.*  The Court recognized as to due process concerns that it "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522 (citations omitted).

The *Demore* Court distinguished this case from *Zadvydas*, 533 U.S. 678 where the Court confronted a due process challenge to detention of aliens under 8 U.S.C. § 1231, which governs

detention following a final order of removal. *Id.* at 527. The Court explained that unlike potentially indefinite detention at issue in *Zadvydas*, detention during removal proceedings has "a definite termination point" and therefore did not implicate due process concerns. *Id.* at 529. The Court concluded its decision by explaining, once more, that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 531.; *Wong Wing,* 163 U.S. at 235 ("We think it clear that detention, or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens would be valid").

Justice Kennedy's concurrence in *Demore* provided further guidance on when an alien detained under 8 U.S.C. § 1226(c) could be entitled to a bond hearing as a matter of due process, explaining that a hearing could be required "if the continued detention became unreasonable or unjustified." *Id.* at 532 (Kennedy, J., concurring). In Justice Kennedy's view, because "the Due Process Clause prohibits arbitrary deprivations of liberty," the constitutionality of detention largely depends on its justifications. *Id.* If detention becomes unreasonably prolonged, a bond hearing could be required to confirm that the reasons for that individual's continued detention remain legitimate: "Were there to be an unreasonable delay by the [Government] in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, *but to incarcerate for other reasons.*" *Id.* at 532-33 (emphasis added).

The U.S. Court of Appeals for the First Circuit also held that detention of an alien seeking admission to the United States does not violate due process in *Amanullah v. Nelson*, 811 F.2d 1, 9 (1st Cir. 1987). In that case, the Court explained that "the detention of the appellants is entirely incident to their attempted entry into the United States and their apparent failure to meet

the criteria for admission—and so, entirely within the powers expressly conferred by Congress."
*Id.* The appellants were detained pursuant to 8 U.S.C. § 1225(b) and the Court found no due process violation in the denial of their parole applications "pending the ultimate (seasonable) resolution of the exclusion/asylum proceedings" as there was "no suggestion of unwarranted governmental footdragging in these cases" and because "prompt attention appears to have been paid to the administrative aspects of exclusion and asylum." *Id.*

Here, there is no dispute that Petitioner is detained for the limited purpose of removal proceedings. CBP acted promptly by issuing him a NTA to appear in removal proceedings where he can challenge his inadmissibly determination and seek relief from removal. His detention is not punitive or for other reasons than to address his inadmissibly to the United States. His detention is also not indefinite, it will end upon the conclusion of his proceedings. As this Court recently recognized, a brief period of detention for the purpose of removal proceedings or to effectuate removal does not violate the constitution. *See Dambrosio v. McDonald, Jr.*, No. 25-CV-10782-FDS, 2025 WL 1070058, at *2 (D. Mass. Apr. 9, 2025) (Recognizing that detention "for a period of less than three months' time … does not amount to an unconstitutional duration.").

### 3. Even Assuming Further Review of Petitioner's Detention is Warranted, no Bond Hearing is Warranted.

Respondent acknowledges that some district courts have determined that further analysis is warranted to determine if an applicant for admission is entitled to a bond hearing under the Constitution once Section 1225's mandatory detention becomes "unreasonably prolonged". *See e.g.*, *Pierre v. Doll*, 350 F. Supp. 3d 327, 331 (M.D. Pa. 2018) (Holding that arriving aliens "have a due process right to an individualized bond consideration once it is determined that the duration of their detention has become unreasonable."); *Brissett v. Decker*, 324 F. Supp. 3d 444,

452 (S.D.N.Y. 2018) (Habeas petition "entitled to an individualized determination as to his risk of flight and dangerousness once his continued detention has become unreasonable and unjustified."); *Cruz v. Nalls-Castillo*, No. CV 16-1587 (MCA), 2017 WL 6698709, at *5 (D.N.J. Sept. 19, 2017) (Twenty-eight month period of detention required bond hearing).

Here, no claim of unreasonably prolonged detention can be raised and therefore no further analysis as to whether a bond hearing is warranted because Petitioner was only recently detained and his removal proceedings were initiated promptly.

### C.  Antone Moniz is the Only Proper Respondent to this Petition.

As a final matter, Antone Moniz, Superintendent of the Plymouth County Correctional Facility, is the only proper Respondent to this action and the other Respondents named to this Petition must be dismissed.  As explained by the Supreme Court, when considering "challenges to present physical confinement … the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent."  *Rumsfeld v. Padilla*, 542 U.S. 426, 339 (2004).  Binding precedent and statutory law hold that the proper respondent to a habeas petition is "the person who has custody over" the petitioner.  *Id.*, 542 U.S. at 434; 28 U.S.C. § 2242.  In considering a habeas petition filed by a detainee in immigration custody, the First Circuit similarly held that the proper respondent is the immediate custodian, *i.e.* the individual "who holds the petitioner in custody."  *Vasquez v. Reno*, 233 F.3d 688, 690 (1st Cir. 2000) (Explaining that "an alien who seeks a writ of habeas corpus contesting the legality of his detention by the [ICE] normally must name as the respondent his immediate custodian, that is, the individual having day-to-day control over the facility in which he is being detained.").

In this case, because ICE is detaining Petitioner at the Plymouth County Correctional Facility, the proper Respondent to this action is Antone Moniz, the Superintendent of Plymouth

County Correctional Facility.  The other named Respondents, all supervisory officials, must be dismissed from this action.

## CONCLUSION

For these reasons, Petitioner's detention is authorized by statute and does not violate the Constitution.  As such, this Court should deny the request to issue a writ of habeas corpus ordering Petitioner's release from ICE custody or that he receive a bond hearing.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: April 14, 2025        By:    */s/ Mark Sauter*
Mark Sauter
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
Email: mark.sauter@usdoj.gov

## CERTIFICATE OF SERVICE

I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated:  April 14, 2025        By:    */s/ Mark Sauter*
Mark Sauter